*Decision will be entered for the respondent.*

ROYCE KERSHAW AND MIRIAM KERSHAW, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 73509. Filed June 8, 1960.

*Fred S. Ball, Jr., Esq.*, for the petitioners.
*Homer F. Benson, Esq.*, for the respondent.

OPINION.

PIERCE, *Judge:* The respondent determined a deficiency in the petitioners' income tax for the year 1956 in the amount of $18,843.76.

The sole issue for decision is whether amounts received in the taxable year 1956 by the principal petitioner from his controlled corporation, pursuant to a contract whereby he sold and assigned to such corporation all rights to a patent developed by him, are taxable to said petitioner-inventor as ordinary income or as capital gain.

All the facts have been stipulated and are incorporated herein by reference. Such facts may be briefly summarized as follows.

The petitioners are husband and wife. They reside in Montgomery, Alabama, and filed a joint income tax return for the calendar year 1956 with the district director of internal revenue at Birmingham, Alabama. Miriam Kershaw is a party herein solely because she joined with her husband in filing said joint return.

Royce Kershaw (hereinafter referred to as the "petitioner") has worked in the railroad construction business all his life. He is not and has never been a professional inventor. However, on January 22, 1952, the petitioner was issued United States Patent No. 2,583,378, covering a machine invented by him, which was designed to spread, evenly distribute and dress, ballast between the rails and on the sides of railroad tracks. The machine is called a ballast spreader.

On January 31, 1952, shortly after having been issued the abovementioned patent covering the ballast spreader, the petitioner sold and assigned such patent to the Kershaw Manufacturing Company, Inc., which was an Alabama corporation engaged in the manufacture and sale of railroad track maintenance equipment. The shares of common and preferred capital stock of this corporation were held on the date of the sale of the patent, as follows:

|  | Common | Preferred |
|---|---|---|
| Royce Kershaw | 63 | ------- |
| Miriam Kershaw (wife of Royce) | 31 | ------- |
| Royce Kershaw, Jr. (son of Royce) | 30 | ------- |
| Fred S. Ball, Jr. (Royce's attorney) | 1 | ------- |
|  | 125 |  |
| Royce Kershaw & Company, a partnership of Royce and wife | ------- | 200 |
| A. G. Nunnally (an unrelated employee of Royce) |  | 5 |
| Royce Kershaw, Jr. and Knox Kershaw (sons of Royce) |  | 5 |
|  |  | 210 |

Under the terms of the contract of sale, the corporation agreed to pay to the petitioner 5 per cent of the retail sales price received by the corporation from sales of ballast spreaders. During the taxable year 1956 here involved, petitioner received $62,540.10 from the corporation; and he reported the same on the joint return filed by him and his wife, as gain realized on the sale of a capital asset held for more than 6 months.

The respondent, in his notice of deficiency, determined that because the petitioner had a "controlling interest" in the Kershaw corporation at the time of the "transfer of the patent to the corporation," such transfer could not be considered as a sale or exchange of a capital asset held for more than 6 months within the meaning of section 1235 of the 1954 Code. Accordingly, he determined that the above-mentioned amount of $62,540.10 received by the petitioner from said corporation was fully taxable as ordinary income under section 61 of the 1954 Code. The correctness of the respondent's action is the sole issue here presented for decision.

The issue here presented is substantially the same as that recently decided by the Court of Claims in *Kershaw* v. *United States*, 180 F. Supp. 415 (1960), which case involved payments received by the present petitioner from the Kershaw corporation out of the same sales transaction here involved, for the preceding years 1952 through 1955. The court there decided the issue against the taxpayer; and we agree with the court's reasoning and decision therein.

Section 1235(a) of the 1954 Code provides generally, in substance and so far as here material, that the transfer of all substantial rights to a patent by a holder, shall be considered the sale or exchange of a capital asset held for more than 6 months. However, subsection (d) of section 1235 provides that subsection (a) shall not apply to transfers between related persons, as described in section 267(b) and (c) of the 1954 Code. Among the related persons defined in section 267 (as modified by section 1235(d)) are an individual, and a corporation more than 25 per cent in value of the outstanding stock of which is owned, directly or indirectly, by or for

such individual. It is clear, and indeed petitioner does not argue otherwise, that more than 25 per cent of the value of the stock of the Kershaw corporation was owned by or for the petitioner on January 31, 1952, the date of the transfer of the patent rights. Thus, the respondent correctly determined that said transfer could not be considered a sale or exchange within the meaning of section 1235.

Section 1.1235-1(b), Income Tax Regs., reasonably provides in substance that where (as in the instant case) section 1235 of the Code has no application, the tax consequences of the transfer of a patent by the holder shall be determined by other provisions of the internal revenue laws. Section 1239 of the 1954 Code [1] provides that proceeds from a sale of *depreciable property* taking place after May 3, 1951, are to be taxed as ordinary income if the sale is "between an individual and a corporation more than 80 per cent in value of the outstanding stock of which is owned by such individual, his spouse, and his minor children and minor grandchildren; * * *."

The facts of the instant case are squarely within the provisions of section 1239. The petitioner, after May 3, 1951, sold the patent to the Kershaw corporation in which he and his wife and his children owned well over 80 per cent of the stock. The patent in the hands of said corporation is "property of a character which is subject to the allowance for depreciation provided in section 167." [2] In *American Chemical Paint Co.* v. *Commissioner*, (C.A. 3) 66 F. 2d 381, reversing other issues, 25 B.T.A. 1208, the court recognized and held that a patent was subject to an allowance for depreciation, exhaustion, or amortization thereof (which follows in substance the wording of section 167).

---

[1] SEC. 1239. GAIN FROM SALE OF CERTAIN PROPERTY BETWEEN SPOUSES OR BETWEEN AN INDIVIDUAL AND A CONTROLLED CORPORATION.

(a) TREATMENT OF GAIN AS ORDINARY INCOME.—In the case of a sale or exchange, directly or indirectly, of property described in subsection (b)—

(1) between a husband and wife; or

(2) between an individual and a corporation more than 80 per cent in value of the outstanding stock of which is owned by such individual, his spouse, and his minor children and minor grandchildren;

any gain recognized to the transferor from the sale or exchange of such property shall be considered as gain from the sale or exchange of property which is neither a capital asset nor property described in section 1231.

(b) SECTION APPLICABLE ONLY TO SALES OR EXCHANGES OF DEPRECIABLE PROPERTY.— This section shall apply only in the case of a sale or exchange by a transferor of the property which in the hands of the transferee is property of a character which is subject to the allowance for depreciation provided in section 167.

(c) SECTION NOT APPLICABLE WITH RESPECT TO SALES OR EXCHANGES MADE ON OR BEFORE MAY 3, 1951.—This section shall apply only in the case of a sale or exchange made after May 3, 1951.

[2] SEC. 167. DEPRECIATION.

(a) GENERAL RULE.—There shall be allowed as a depreciation deduction a reasonable allowance for the exhaustion, wear and tear (including a reasonable allowance for obsolescence)—

(1) of property used in the trade or business, or

(2) of property held for the production of income.

Petitioner has argued strenuously here, as he did before the Court of Claims, that section 1239 or its 1939 Code counterpart, section 117(o), was meant to apply only to such tangible depreciable assets as buildings, and not to intangible assets of the character of a patent. We however, like the Court of Claims and for the reasons which it advanced, are unable to read into section 1239 a limitation so confining its applicability.

We hold that the amounts received by the petitioner during the taxable year 1956 are fully taxable as ordinary income.

*Decision will be entered for the respondent.*

